UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN H. ROUNDS                                    Case No. 15-12440

           Plaintiff,                        Stephanie Dawkins Davis
v.                                                United States Magistrate Judge

COMMISSIONER OF SOCIAL SECURITY,

           Defendant.
_____/

**OPINION AND ORDER**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 14, 17)**

**I.**    **PROCEDURAL HISTORY AND FACTUAL BACKGROUND**

    A.    <u>Proceedings in this Court</u>

On July 8, 2015, plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits. (Dkt. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Robert H. Cleland referred this matter to Magistrate Judge Michael Hluchaniuk for the purpose of reviewing the Commissioner's decision denying plaintiff's claims for disability insurance benefits and supplemental security income. (Dkt. 4). On January 5, 2016, this matter was reassigned to the undersigned Magistrate Judge. *See* Text-Only Order of reassignment dated 1/5/16. On January 25, 2016, the parties filed a notice of consent to this Magistrate Judge's authority, which was

signed by Judge Cleland.  (Dkt. 16, 18).  This matter is before the Court on cross-motions for summary judgment.  (Dkt. 14, 17).

    B.    <u>Administrative Proceedings</u>

Plaintiff filed the instant claims for period of disability and disability insurance benefits on August 22, 2012, alleging that he became disabled on April 22, 2012.  (Dkt. 10-2, Pg ID 40).  The claims were initially disapproved by the Commissioner on January 16, 2013.  *Id*.  Plaintiff requested a hearing and on December 5, 2013, plaintiff appeared with counsel before Administrative Law Judge (ALJ) Roxanne J. Kelsey, who considered the case *de novo*.  (Dkt. 10-2, Pg ID 58-101).  In a decision dated February 28, 2014, the ALJ found that plaintiff was not disabled.  (Dkt. 10-2, Pg ID 37-52).  Plaintiff requested a review of this decision on April 2, 2014.  (Dkt. 10-2, Pg ID 35).  The ALJ's decision became the final decision of the Commissioner when the Appeals Council, on May 5, 2015, denied plaintiff's request for review.  (Dkt. 10-2, Pg ID 28-32); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

    C.    <u>ALJ Findings</u>

Plaintiff was 50 years old on the alleged disability onset date.  (Dkt. 10-2, Pg ID 50).  Plaintiff had past relevant work as an electronics mechanic, which involves heavy exertion as plaintiff performed it but was a medium level occupation as typically performed in the national economy.  *Id*.  The ALJ applied

the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since the alleged onset date. *Id*. at 42. At step two, the ALJ found that plaintiff's fibromyalgia, peripheral neuropathy, lumber degenerative disc disease with sacroiliitis, and depression were "severe" within the meaning of the second sequential step. *Id*. At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations. *Id*. at 44.

The ALJ determined that plaintiff had the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) involving: occasional climbing, balancing, stooping, kneeling, crouching and crawling; occasional concentrated exposure to hazards such as dangerous, moving machinery and unprotected elevations. The claimant lacks the ability to understand, remember and carry out detailed instructions, but retains the sustained concentration necessary for simple work of a routine and repetitive type. He should not be required to drive a motor vehicle as a part of the job.

*Id*. at 46-47. At step four, the ALJ found that plaintiff was unable to perform his past relevant work, given his RFC. *Id*. at 50. At step five, the ALJ denied plaintiff benefits because he could perform a significant number of jobs available in the national economy. *Id*. at 50-51.

For the reasons set forth below, plaintiff's motion for summary judgment is **DENIED** in part and **GRANTED** in part, defendant's motion for summary judgment is **GRANTED** in part and **DENIED** in part, the findings of the Commissioner are **AFFIRMED** in part and **REVERSED** in part, and this matter is **REMANDED** for further proceedings under Sentence Four.

## II.   DISCUSSION

### A.   Standard of Review

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the

Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing, *Mullen*, 800 F.2d at 545).

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the

administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508

(6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly

addressing in his written decision every piece of evidence submitted by a party.")

(internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*,

198 Fed. Appx. 521, 526 (6th Cir. 2006).

    B.    <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits."

*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);

*accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq.*) and the

Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et

seq.*). While the two programs have different eligibility requirements, "DIB and

SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475

F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI). The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited

7

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the

Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

     If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

     C.    <u>Step 2 - Chronic Fatigue Syndrome</u>

     Plaintiff argues that the ALJ's determination that his chronic fatigue

syndrome is non-severe is unsupported by substantial evidence.  According to

plaintiff, the ALJ determined that his well documented chronic fatigue syndrome

was "not severe," and in doing so, the ALJ erroneously rejected all of the opinion

evidence in the record.  Dr. Haduck, plaintiff's long-term treating physician,

offered multiple opinions diagnosing him with chronic fatigue syndrome.

According to plaintiff, his treatment records are consistent with the conclusion that

he suffers from chronic fatigue syndrome.  Dr. Bernick, an allergist, examined plaintiff in June 2012. Dr. Bernick identified "a number of problems" on a clinical basis and concluded that "chronic fatigue syndrome seems most appropriate" as a diagnosis for his malaise and fatigue which defied a well-defined diagnosis.  Dr. Haduck's treatment notes also consistently document plaintiff's history of severe fatigue. On May 7, 2012, Dr. Haduck assessed him with fatigue accompanied by dizziness, (Dkt. 10-7, Pg ID 311), and his past history of chronic fatigue was noted. (Dkt. 10-7, Pg ID 320).  Plaintiff  complained of "severe fatigue" on May 17, 2012.  (Dkt. 10-7, Pg ID 302).  On May 31, 2012, fatigue was again assessed along with fibromyalgia and depression.  (Dkt. 10-7, Pg ID 310). On June 18, 2012, Dr. Haduck again assessed plaintiff with fatigue.  (Dkt. 10-7, Pg ID 308). On July 10, 2012, "fatigue" was identified in a review of plaintiff's range of symptoms.  (Dkt. 10-7, Pg ID 306).  Dr. Haduck also excused plaintiff from working during this time period due to his "extreme fatigue and vertigo."  (Dkt. 10-8, Pg ID 411).  In January 2013, Dr. Haduck submitted a letter to State Farm Insurance explaining plaintiff's inability to work.  Consistent with his opinions as expressed above, Dr. Haduck diagnosed plaintiff with chronic fatigue syndrome in addition to hypothyroidism and neuropathy.  Plaintiff's symptoms included extreme fatigue, pain in legs, and vertigo.  (Dkt. 10-8, Pg ID 438).

In response, the Commissioner maintains that the ALJ committed no error

9

and her Step 2 finding is supported by substantial evidence.  According to the

Commissioner, plaintiff failed to satisfy the threshold requirement at Step 2

because his condition was not a "medically determinable impairment."  (Dkt. 10-2,

Pg ID 42-44).  Specifically, the Act defines a "physical or mental impairment" as

"an impairment that results from anatomical, physiological, or psychological

abnormalities which are demonstrable by medically acceptable clinical and

laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).  The existence of a

medically determinable physical or mental impairment must be established by

medical evidence consisting of signs, symptoms, and laboratory findings, but

under no circumstances may the existence of an impairment be established on the

basis of symptoms alone.  SSR 96-4p, 1996 WL 374187, at *1-2 (1996).  *See* 20

C.F.R. § 404.1529(b) ("Your symptoms, such as pain, fatigue, shortness of breath,

weakness, or nervousness, will not be found to affect your ability to do basic work

activities unless medical signs or laboratory findings show that a medically

determinable impairment(s) is present.").  Plaintiff told numerous doctors that he

had been diagnosed with chronic fatigue syndrome in the past; however, the

Commissioner asserts that the record contains no well-defined diagnosis of or

treatment for the condition.

Although the record contains "diagnoses" of chronic fatigue syndrome, the

Commissioner asserts that the ALJ reasonably found them to be "speculative," and

none were documented by medically acceptable clinical and laboratory findings.
(Dkt. 10-2, Pg ID 43).  The first time "chronic fatigue syndrome" appeared in the
record was in an October 2007 neuropsychological evaluation in which Holly A.
Aulph, M.A. wrote, "We cannot rule out chronic fatigue syndrome, however, to
date, research regarding chronic fatigue syndrome and cognitive deficits seem to
indicate more involvement of motor and working memory difficulties. At this
time, we are not seeing those findings."  (Dkt. 10-7, Pg ID 398).  The condition is
next referenced in a June 26, 2012 treatment note, in which John J. Bernick, M.D.
wrote, "medically, [Plaintiff's] problems [which included "malaise and fatigue"]
defy an objective diagnosis."  (Dkt. 10-7, Pg ID 294).  Although Dr. Bernick
stated that "[t]he term chronic fatigue syndrome seems most appropriate," he also
acknowledged that "there is no well-defined diagnosis or treatment."  *Id.*

According to the Commissioner, the remaining assessments appear to be
based on plaintiff's own assertions that he was previously diagnosed with the
condition, and on his reported symptoms.  For example, the November 2012
diagnosis by Robert Jamieson, D.O., of a "history of chronic fatigue" was based
on plaintiff's report that he was diagnosed one year earlier, as well as his "reported
history of lack of energy and allegations of difficulty with performing everyday
activities."  (Dkt. 10-2, Pg ID 44; Dkt. 10-7, Pg ID 330-332).  Similarly, in each of
the four opinions provided by Paul Haduck, D.O., the doctor indicated that

plaintiff had chronic fatigue syndrome, yet the Commissioner points out that none

of his opinions (or treatment notes) include any medically acceptable clinical

and/or laboratory findings to support the diagnosis. Dkt. 10-7, Pg ID 324-328

(October 2012), Dkt. 10-8, Pg ID 438-439 (January 2013), Dkt. 10-8, Pg ID 402-

404 (September 2013), Dkt. 10-8, Pg ID 465-468 (December 2014).  At most, the

Commissioner asserts that Dr. Haduck's treatment notes report plaintiff's

subjective symptoms of fatigue and dizziness.  (*See e.g*., Dkt. 10-7, Pg ID 302,

308, 310, 311. As noted above, "[s]tatements merely recounting the symptoms of

the applicant or providing only a diagnosis will not establish a medical impairment

for purposes of Social Security benefits."  *See* SSA Chronic Fatigue Syndrome -

FACT SHEET available at

https://www.ssa.gov/disability/professionals/cfs-pub063.htm.

Even if this court were to conclude that the ALJ erred by not finding chronic

fatigue syndrome to be severe, the Commissioner maintains that the error would

be harmless in this case because the ALJ proceeded with the sequential evaluation

and considered plaintiff's reported symptoms throughout the process.  (Dkt. 10-2,

Pg ID 44-50).  For example, the ALJ included limitations based on plaintiff's

dizziness in the RFC finding.  (Dkt. 10-2, Pg ID 47).  She found that plaintiff

should not be required to drive, based on his testimony that "he has dizziness due

to chronic fatigue that prevents him from driving." (Dkt. 10-2, Pg ID 47, 49).  She

also included a limitation that he not perform work that involves being around hazards.  (Dkt. 10-2, Pg ID 46, 49).

The Court rejects plaintiff's argument of reversible error regarding the ALJ's Step 2 analysis.  As plaintiff acknowledges, the omission of an impairment from the step two findings does not typically warrant remand because the ALJ found that plaintiff had other impairments that met the criteria for severity at Step 2, and thus proceeded to Step 3 in the sequential analysis.  *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) (holding that because the Secretary had found at least one other "severe" limitation, the severity of Maziarz's cervical condition was irrelevant for the step two analysis).  If a claimant has more than one impairment, the ALJ must consider all medically determinable impairments when assessing the RFC, including those that are not severe.  20 C.F.R. § 404.1545(a)(3); *Fisk v. Astrue*, 253 Fed.Appx. 580, 584 (6th Cir. 2007) (noting that once the ALJ determines at least one severe impairment, he "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe'").  A Step 2 omission is of "little consequence," provided that the ALJ considered "all impairments, severe and nonsevere," in crafting the RFC.  *See Pompa v. Comm'r of Soc. Sec.*, 73 Fed.Appx. 801, 803 (6th Cir. 2003).

The present circumstances are quite similar to those in *Carney v. Colvin*,

2015 WL 5089783, *7 (M.D. Tenn. 2015), in which the Court concluded that while the ALJ erred in failing to find that the plaintiff's CFS was a severe impairment, the ALJ did not err in his subsequent consideration of the effects of the plaintiff's CFS.  The *Carney* court explained that CFS is not a listed impairment, thus it cannot be evaluated as such at Step 3, but "in cases in which a person with CFS has psychological manifestations related to CFS, we must consider whether the person's impairment meets or equals the severity of any impairment in the mental disorders listings." *Id*. (quoting SSR 14-1p at *8).  In *Carney*, the court concluded that the ALJ followed this requirement, evaluating whether the plaintiff's depression, anxiety disorder, or personality disorder met or equaled a listing and the ALJ accounted for fatigue and related symptoms in his RFC assessment.  Thus, the court concluded that there was no error.  *Id*.

Similarly, here, the Court agrees with the Commissioner's analysis that doctors diagnosed plaintiff with other conditions that might have caused his reported symptoms of fatigue and dizziness and that the ALJ fully considered and accounted for these conditions and symptoms in formulating his RFC.  *See e.g.*, Dkt. 10-7, Pg ID 304 (depression), Dkt. 10-7, Pg ID 305 (fibromyalgia), Dkt. 10-7, Pg ID 306 (fibromyalgia and hypothyroidism), Dkt. 10-7, Pg ID 308 (fibromyalgia and hypothyroidism), Dkt. 10-7, Pg ID 310 (fibromyalgia and hypothyroidism), Dkt. 10-7, Pg ID 363 (pernicious anemia), Dkt. 10-7, Pg ID 365 (hypothyroidism),

14

Dkt. 10-7, Pg ID 373 (hypothyroidism, pernicious anemia), Dkt. 10-7, Pg ID 377 (acute vertigo), Dkt. 10-8, Pg ID 460 (hypothyroidism).  Because the ALJ found both depression and fibromyalgia to be severe impairments at Step 2 and continued to consider the effects of those conditions—dizziness and fatigue—throughout the sequential evaluation process, the Court finds that any error in concluding that plaintiff's CFS was non-severe is harmless.  (Dkt. 10-2, Pg ID 42).  As explained in SSR14-1p, CFS is only diagnosed when the symptoms cannot be explained by another physical or mental disorder.  And here, plaintiff points to no other symptoms or limitations caused by his CFS that the ALJ failed to consider in the five step analysis.  For these reasons, just as in *Carney*,[1] the Court concludes that any error at Step 2 is harmless and does not provide a basis for reversing the Commissioner's findings in this regard.

   D.   <u>Weighing of Medical Opinions</u>

   In addition to claiming that the ALJ erroneously rejected the opinions of his treating physician with respect to the CFS diagnosis, plaintiff also claims that the ALJ failed to follow the regulations regarding weighing a treating physician opinion when an ALJ determines that the opinion is not entitled to controlling weight.  Plaintiff does not appear to suggest that Dr. Haduck's opinion regarding

---

[1] Notably, in *Carney*, the Court concluded that the ALJ erred by not finding the plaintiff's CFS to be a severe impairment, yet still found the error harmless.

plaintiff's limitations were entitled to controlling weight and thus, this issue will be given no further consideration by the Court.

Where an ALJ determines that plaintiff's treating physician's opinions should not be given controlling weight despite the medical evidence in support, "the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Allen v. Comm'r of Soc. Sec.*, 2013 WL 5676254, at *13 (E.D. Mich. Sept. 13, 2013) (citing *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)). "The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion." 20 C.F.R. § 404.1527(c)(3). "Moreover, when the physician is a specialist with respect to the medical condition at issue, . . . her opinion is given more weight than that of a non-specialist." *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011). The Commissioner is required to provide "good reasons" for discounting the weight given to a treating-source opinion. These reasons must be supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the

16

adjudicator gave to the treating source's medical opinion and the reasons for that weight. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). "This circuit 'has made clear that [it] do[es] not hesitate to remand when the Commissioner has not provided good reasons for the weight given to a treating physician's opinion.'" *Gayheart,* 710 F.3d at 380 (citation omitted).

On October 4, 2012, Dr. Haduck indicated diagnoses of chronic fatigue syndrome, hypothyroidism, and COPD and he identified plaintiff's primary symptom as fatigue. (Dkt. 10-7, Pg ID 324). He rated plaintiff's fatigue as 9 out of 10. *Id.* He opined that it was difficult to determine how much plaintiff could stand or walk in an 8 hour day and that he could only occasionally lift more than 10 pounds. (Dkt. 10-7, Pg ID 325). He concluded that plaintiff could not do a full time competitive job which required activity on a sustained basis and would need to avoid fumes and dust. (Dkt. 10-7, Pg ID 326). He stated that plaintiff's emotional factors contributed to his symptoms and limitations, was not a malingerer, and was only capable of low stress work. (Dkt. 10-7, Pg ID 327). Dr. Haduck also opined that plaintiff would be absent from work more than 3 times per month. (Dkt. 10-7, Pg ID 328).

Almost a year later in September 2013, Dr. Haduck offered a second opinion on plaintiff's work related limitations. Again, Dr. Haduck diagnosed chronic fatigue syndrome with variable symptoms. Dr. Haduck concluded that

plaintiff's symptoms and limitations would vary and be precisely difficult to quantify but that he would need the ability to shift positions at will and take unscheduled breaks during an eight hour workday. (Dkt. 10-8, Pg ID 401). He again opined that plaintiff was only able to safely lift and carry more than 10 pounds. He stated

that plaintiff would have both good days and bad days and that on his bad days he is bedridden. His impairments would cause plaintiff to be absent more than two times a month. (Dkt. 10-8, Pg ID 404). In December 2013, Dr. Haduck again offered an opinion on plaintiff's work related limitations. He again diagnosed plaintiff with chronic fatigue syndrome, in addition to COPD, chronic pancreatitis, chronic abdominal pain, neuropathy in both feet, hypothyroidism, depression, and anxiety. He found plaintiff's prognosis poor and again identified his primary symptom as "severe fatigue." He also identified symptoms of low back pain, insomnia, joint pain and swelling. (Dkt. 10-8, Pg ID 465). He opined that plaintiff could sit for no more than two hours continuously due to back pain and only stand or walk for two hours in an 8-hour workday. As above, he identified limitations in reaching, handling, and fingering and opined that plaintiff could not sustain a competitive job which required work activity on a sustained basis. (Dkt. 10-8, Pg ID 465-466). He stated plaintiff was now incapable of low stress work and identified chronic pain, lack of sleep, and sedating medication as his basis for

the conclusion that plaintiff was unable to work.  (Dkt. 10-8, Pg ID 468).

With respect to Dr. Haduck's opinions regarding plaintiff's functional capacity, plaintiff maintains that the ALJ found only that his opinion was not entitled to "controlling weight" and the ALJ did not proceed, as required, to consider the 20 C.F.R. § 404.1527 factors.  (Dkt. 10-2, Pg ID 50).  According to plaintiff, this is clear error, which can only be corrected by remanding the case for further proceedings.  *Wilson*, 378 F.3d at 544 (citing 20 C.F.R. § 404.1527(c)(2)). Plaintiff also points out that Dr. Jamieson personally examined him, which is another factor that the regulations also require an ALJ to consider when weighing a medical opinion.  *See* 20 C.F.R. § 404.1527(c)(1) ("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you."). Plaintiff asserts that the ALJ also gave no obvious consideration to the fact that the opinions of Dr. Haduck, Dr. Jamieson, and Dr. Ipakchi are consistent with each other in concluding plaintiff's chronic fatigue syndrome was a severe impairment, another required factor under the regulations.  20 C.F.R. § 404.1527(c)(4) (requiring that the consistency of medical opinions be considered in the weighing analysis).  According to plaintiff, the ALJ neglected to assign any specific weight at all to the opinion of Dr. Jamieson, which is error.  *See* 20 C.F.R. § 404.1527(d) ("Regardless of its source, we will evaluate every medical opinion we receive.").

The Commissioner urges the Court to reject plaintiff's argument that the ALJ failed to provide sufficient good reasons for discounting the medical opinions from Drs. Haduck and Jamieson.  The Commissioner argues that the ALJ appropriately declined to give controlling weight to any of Dr. Haduck's opinions because they contradicted each other and were inconsistent with the doctor's own treatment notes.  (Dkt. 10-2, Pg ID 50).  The Commissioner points out that Dr. Haduck's opinions became increasingly restrictive within a very short period of time.  In October 2012, he stated that plaintiff could sit for five hours, walk or stand for up to three hours, and lift up to fifty pounds occasionally.  (Dkt. 10-7, Pg ID 324-325).  In contrast, just over a year later, the doctor opined that plaintiff was unable to sit, walk, or stand for any length of time and could only rarely carry ten pounds.  (Dkt. 10-8, Pg ID 466).  According to the Commissioner, the doctor provided no justification for these increased limitations.  (Dkt. 10-2, Pg ID 48-49).  On the contrary, his opinions reflect that plaintiff's level of pain had not changed since the first opinion—it measured 8 out of 10 both in October 2012 and December 2013.  (Dkt. 10-7, Pg ID 324; Dkt. 10-8, Pg ID 465).  Moreover, plaintiff's fatigue had actually decreased since the first opinion, measuring 9 out of 10 in October 2012 and 8 out of 10 in December 2013.  *Id*.  The Commissioner also asserts that Dr. Haduck's treatment notes provide no additional insight as they reflect generally unremarkable examinations, and it appears that Dr. Haduck has

not treated plaintiff since before he provided his first opinion.  The doctor's most recent note, dated one month before his first opinion was issued and more than a year before his final opinion was issued, shows normal examination findings with no suggestion that plaintiff's condition had worsened.  (Dkt. 10-7, Pg ID 304 (September 4, 2012)).

The factors to be considered by the ALJ under 20 C.F.R. § 404.1527(c) are: the length of treatment and frequency of examination, the nature and extent of treating relationship, supportability, consistency, and specialization.  The ALJ only expressly considered the controlling weight test in her decision.  (Dkt. 10-2, Pg ID 50).  While the ALJ discussed Dr. Haduck's opinion throughout the decision, she did not explain what weight, if any, was given to his extensive opinions and why.  She discussed, at length, how plaintiff's testimony was not consistent with the medical evidence, including Dr. Haduck's opinions and records, but nothing in this discussion suggests any analysis of the factors identified above or how the ALJ was assessing Dr. Haduck's opinion under those factors.  Indeed, the ALJ noted that Dr. Haduck did not provide any opinion regarding plaintiff's CFS diagnoses; rather he only provided opinions regarding plaintiff's ability to perform physical activities.  (Dkt. 10-2, Pg ID 43).  But, the ALJ only determined that Dr. Haduck's opinions - given that they were "contradictory as earlier discussed and not supported by his own treatment

21

records" – should not be given controlling weight.  The Commissioner does not acknowledge that plaintiff is <u>not</u> asserting a "controlling weight" error, and consequently does not offer much in the way of a substantive response to plaintiff's 20 C.F.R. § 404.1527(c) argument.  To the extent the Commissioner points out that the ALJ noted the inconsistencies in Dr. Haduck's opinions, this is insufficient under 20 § C.F.R. 404.1527(c).[2]  Nothing in the decision gives the Court any indication about the actual weight given or the supporting reasoning.  Thus, this matter must be remanded for further consideration of the treating physician opinions under 20 C.F.R. § 404.1527(c).

While plaintiff asserts that the ALJ failed to consider Dr. Jamieson's opinion, plaintiff only seems to allege this as an error with respect his CFS diagnosis, as opposed to any opinions offered by Dr. Jamieson regarding plaintiff's functional limitations.   The Court has already determined that any failure to find plaintiff's CFS to be severe is a harmless error, but will briefly

---

[2]  The Commissioner seems to collapse the two potential paths of error in the assessment of treating physician opinions.  To the extent that the Commissioner's argument is a "*post-hoc*" rationalization for the ALJ's failure to consider the second path (the factors under 20 C.F.R. § 404.1527(c)), the Court notes that it "may not accept appellate counsel's post hoc rationalizations for agency action.  It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." *Berryhill v. Shalala*, 4 F.3d 993, 1993 WL 361792, at *6 (6th Cir. 1993) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50, 103 (1983)).  "Courts are not at liberty to speculate on the basis of an administrative agency's order.... The court is not free to accept 'appellate counsel's post hoc rationalization for agency action in lieu of reasons and findings enunciated by the Board.'" *Hyatt Corp. v. N.L.R.B.*, 939 F.2d 361, 367 (6th Cir. 1991).  Thus, the Commissioner's *post hoc* rationalizations are not an acceptable substitute for the ALJ's lack of rationale concerning her treatment of the opinions of plaintiff's treating physician.

touch on this issue as it relates to the proper weighing of medical opinions. The

Court agrees with the Commissioner that, contrary to plaintiff's argument, the ALJ

explained why she rejected Dr. Jamieson's chronic fatigue syndrome diagnosis.

Specifically, the ALJ wrote,

> At the internal medicine consultative examination the
> claimant informed Dr. Jami[e]son that he had been
> diagnosed more than a year earlier with chronic fatigue
> but alleged problems since 2000 including lack of energy
> and never feeling rested. However, there are no medical
> reports documenting the longstanding conditions.

(Dkt. 10-2, Pg ID 49). As Dr. Jamieson really offered no other medical opinions

(Dkt. 10-7, Pg ID 330-332), there was nothing else for the ALJ to "weigh." Thus,

plaintiff's allegation that the ALJ failed to state what weight she gave Dr.

Jamieson's diagnosis is without merit and there is no basis to reverse the

Commissioner's findings in this regard.

### D.   Simple, Routine, and Repetitive Tasks

Plaintiff points out that the ALJ determined at Step 3 that plaintiff had a

moderate limitation in his ability to maintain concentration, persistence or pace.

(Dkt. 10-2, Pg ID 46). In her RFC determination, she further concluded that

plaintiff lacks the ability to understand, remember and carry out detailed

instructions, but retains the sustained concentration necessary for simple work, of

a routine and repetitive type. (Dkt. 10-2, Pg ID 47). According to plaintiff, the

ALJ erred when she failed to capture her own concentration, persistence or pace

finding into the RFC.  The Sixth Circuit has held that a limitation to "simple

unskilled routine" work was not sufficient to fully convey the speed and pace

based restrictions indicated by even a claimant's moderate limitations in

concentration, persistence or pace.  *Ealy v. Comm'r of Soc. Sec*., 594 F.3d 504,

516-517 (6th Cir. 2010).  Similarly, this District Court has found that a

hypothetical question that does not adequately describe the nature of a claimant's

moderate limitations in concentration, persistence or pace was not sufficient to

provide substantial evidence supporting the ALJ's determination.  Thus, plaintiff

asserts that the ALJ's restriction in this RFC to "simple, routine, repetitive tasks"

is error because it does not provide the required function-by-function analysis.

*Cheeks v. Comm'r of Soc. Sec*., 690 F. Supp. 2d 592 (E.D. Mich. 2009); *Edwards*

*v. Barnhart*, 383 F.Supp.2d 920, 930-931 (E.D. Mich. 2005).

Plaintiff further explains that because the ALJ found that he had significant

deficits of concentration, persistence or pace, and the record supports this

conclusion the analysis required under *Ealy* is thus triggered.  In support, plaintiff

points to the Agency's psychological examiner, who performed testing which

showed he could not perform serial seven subtractions and mistakes on serial three

subtractions.  (Dkt. 10-7, Pg ID 341).  Moreover, even the nonexamining Agency

psychological consultant's opinion establishes specific concentration, persistence

24

or pace limitations beyond the ALJ's simplistic "simple routine repetitive" RFC.
In particular, the consultant found that plaintiff was limited to one or two step
tasks, Dkt. 10-3, Pg ID 111, a limitation not included in the ALJ's RFC
determination.

In response, the Commissioner maintains that the ALJ properly accounted
for plaintiff's moderate limitations in concentration, persistence or pace by
limiting him to "simple work of a routine and repetitive type." (Dkt. 10-2, Pg ID
46-47). Unlike *Ealy*, the Commissioner contends that the evidence in this case
does not support a pace-based limitation. *Cf. Ealy*, 594 F.3d at 516 ("Dr. Scher
specifically limited Ealy's ability to sustain attention to complete simple repetitive
tasks to '[two-hour] segments over an eight-hour day where speed was not
critical.'").

According to the Commissioner, the record opinions include no pace-based
limitations. Leonard C. Balunas, Ph.D. opined that plaintiff had moderate
limitations in the category of "Difficulties in Maintaining Concentration,
Persistence[,] or Pace." (Dkt. 10-3, Pg ID 108). A limitation in this category,
however, does not mean that a claimant is limited in all three areas. In this case,
the psychologist opined that plaintiff had "no problems with attention" and
"sufficient concentration to perform simple 1-2 step tasks all on a routine and
regular basis." (Dkt. 10-3, Pg ID 111). With respect to pace, Dr. Balunas opined

25

that plaintiff's ability to perform activities within a schedule was not significantly

limited. (Dkt. 10-3, Pg ID 111). After evaluating plaintiff, Dawn Bane Gventer,

Psy.D. opined that plaintiff's memory was intact and his concentration was "a bit

impaired," but he possessed no functional restrictions. (Dkt. 10-7, Pg ID 343).

Although Dr. Gventer noted no functional limitations, the ALJ found—consistent

with Dr. Balunas' opinion—that plaintiff had moderate limitations in

concentration, persistence, or pace. (Dkt. 10-2, Pg ID 46). The ALJ explained,

> In the function report, the claimant reported difficulty
> focusing and concentrating. He stated that he
> occasionally had to be reminded to do things. At the
> psychological consultative examination, the claimant
> was not able to perform serial seven subtractions and
> when he did serial three subtractions, made two mistakes
> through the number 82. He was able, however, to sustain
> concentration to persevere through the other testing at
> this examination.

*Id*. (internal citations omitted). Consistent with the evidence, the ALJ limited

plaintiff to performing simple work of a routine and repetitive type that does not

require the ability to understand, remember and carry out detailed instructions.

(Dkt. 10-2, Pg ID 46-47). She explained that plaintiff "retains the sustained

concentration necessary" for this type of work. *Id*. Notably, both doctors opined

that Plaintiff could work. *Young v. Comm'r of Soc. Sec.*, 2011 WL 2601014, at

*10 (E.D. Mich. May 23, 2011) (finding that although moderate limitations were

assessed in the record, the plaintiff failed to mention that the same assessment also

26

concluded that the plaintiff was capable of unskilled work). Thus, the

Commissioner maintains that plaintiff has not proven that a pace-based limitation

is required to enable him to perform simple, routine, repetitive work.

The Commissioner urges the Court to reject plaintiff's contention of error

because the ALJ did not include a "simple 1-2- step task" limitation in the RFC,

despite Dr. Balunas' opinion in this regard. The Commissioner argues that even if

this court concludes that an inconsistency exists, it would not have affected the

outcome in this case. The vocational expert testified that plaintiff could perform

the following jobs based on a limitation to simple, routine, repetitive work:

assembler (DICOT 731.687-010); inspector (DICOT 704.687-010); and hand

packager (DICOT 789.687-066). (Dkt. 10-2, Pg ID 89). The Commissioner

explains that each of those jobs requires a reasoning level 1, which includes

applying "commonsense understanding to carry out simple one- or two-step

instructions." In other words, the jobs identified by the vocational expert, and

relied on by the ALJ, involved only one- to two-step tasks which is consistent with

the limitation that plaintiff urges should have been stated expressly in the RFC

finding. Thus, according to the Commissioner, any error is harmless. *See Shinseki*

*v. Sanders*, 556 U.S. 396, 409 (2009) ("the burden of showing that an error is

harmful normally falls upon the party attacking the agency's determination");

*Rabbers v. Comm'r of Soc. Sec*., 582 F.3d 647, 654 (6th Cir. 2009) ("Generally …

27

we review decisions of administrative agencies for harmless error").

Courts in this District have determined that "there is no bright-line rule requiring remand whenever an ALJ's hypothetical includes a limitation of 'unskilled, routine work' but excludes a moderate limitation in concentration. Rather, the Court must look at the record as a whole and determine if substantial evidence supports the ALJ's RFC." *Smith v. Comm'r of Soc. Sec.*, 2013 WL 6094745, at *8 (E.D. Mich. Nov. 20, 2013) (citing *Hess v. Comm'r of Soc. Sec.*, 2008 WL 2478325, at *7 (E.D. Mich. June 16, 2008)); *see also Lewicki v. Comm'r of Soc. Sec.*, 2010 WL 3905375, at *3 (E.D. Mich. Sept. 30, 2010).  In other words,

> Taken in isolation, the hypothetical limitations consisting of '[s]imple routine tasks in a low stress environment' and 'minimal changes in the work place setting' might appear inadequate to account for 'moderate' concentrational and pacing deficiencies. However, the record as a whole indicates that the hypothetical question and the ALJ's finding of "moderate" limitations findings are not incompatible.

*Hess*, 2008 WL 2478325, at *7; *see also Lewicki*, 2010 WL 3905375, at *3.  In *Hess*, for example, even though the ALJ omitted a concentration-based limitation from the hypothetical, this court did not remand because the entire record supported a finding that plaintiff could perform unskilled work on a sustained basis. *Hess*, 2008 WL 2478325, at *8.

28

The essential question here is whether the ALJ's conclusion that plaintiff was limited to simple, routine, repetitive tasks sufficiently accommodated the ALJ's finding that plaintiff had moderate difficulties in concentration, persistence, or pace. This issue has been addressed numerous times in this District, as noted in *Hicks v. Comm'r*, 2011 WL 6000714 (E.D. Mich. 2011) (*adopted by* 2011 WL 6000701 (E.D. Mich. 2011) (Roberts, J.)). The undersigned agrees with the holding in *Hicks* that an RFC and hypothetical simply limiting a claimant to "simple routine tasks" may, in some instances, fail to capture a claimant's moderate limitation in concentration, persistence, or pace because the difficulty of a task is not equivalent to the difficulty of staying on task. *Id.* (*citing Green v. Comm'r of Soc. Sec.*, 2009 WL 2365557, at *10 (E.D. Mich. 2009) ("It is difficult to reasonably accept 'moderate' meaning anything less than 20%–30% of the time at work. Thus, 'moderate' concentration problems . . . need to be included or accommodated in some suitable fashion in the hypothetical question at Step 5. . . . Simply including the hypothetical of unskilled jobs with limited contact with co-workers and the public is not sufficient."); *Edwards v. Barnhart*, 383 F. Supp. 2d 920, 930 (E.D. Mich. 2005) ("Plaintiff may be unable to meet quotas, stay alert, or work at a consistent pace, even at a simple, unskilled, routine job.")). Yet, other cases seemingly conclude otherwise. *See e.g., Bohn-Morton v. Comm'r of Soc. Sec.*, 389 F.Supp.2d 804, 807 (E.D. Mich. 2005) (finding that "unskilled" work

29

limitation in RFC was sufficient to account for ALJ's PRTF finding that claimant "often" experiences CPP issues); *Lewicki v. Comm'r of Soc. Sec.*, 2010 WL 3905375, at *3 (E.D. Mich. 2010) ("There may be cases where such moderate limitations preclude the performance of even some simple, unskilled tasks. Plaintiff does not, however, explain why the facts of this particular case require a more detailed hypothetical question to adequately account for his own moderate limitations in concentration, persistence, or pace.").

*Hicks* highlights an important reason the outcomes of these seemingly similar cases are often so different. The cases within this District that do not remand for the ALJ to include a moderate concentration, persistence, or pace limitation are distinguishable because a medical professional had made a specific finding that the claimant had moderate difficulties in concentration, persistence, or pace, but could still work on a sustained basis. *Hicks*, 2011 WL 6000701, *4. Judge Michelson distinguished the cases where a medical professional found moderate difficulties in concentration, persistence, or pace, from cases like *Benton v. Comm'r of Soc. Sec.*, 511 F. Supp. 2d 842 (E.D. Mich. 2007) and the facts of *Hicks*, where the ALJ (rather than a medical professional) made the finding of moderate limitations in concentration, persistence, or pace.

Here, the ALJ made a finding of moderate limitations in concentration, persistence, or pace, supported by a medical opinion finding a moderate limitation

in concentration, persistence, or pace (Dkt. 10-3, Pg ID 110-111), which indicated that the plaintiff was still capable of sustained simple tasks.  In the view of the undersigned, as explained by the Commissioner, the jobs identified by the vocational expert require a reasoning level 1, which includes applying commonsense understanding to carry out simple one- or two-step instructions.  For this reason, the limitation to one or two-step instructions was accommodated in the jobs identified by the vocational expert.  To the extent that there could have been any error in the failure to specify one or two-step instructions in the hypothetical question, it was entirely harmless.  Thus, the RFC and hypothetical question in this case were not flawed and properly accounted for plaintiff's moderate limitation in concentration, persistence, or pace.  Based on the foregoing, the Court finds no basis to reverse the findings of the Commissioner in this regard.

For the reasons set forth above, plaintiff's motion for summary judgment is **DENIED** in part and **GRANTED** in part, defendant's motion for summary judgment is **GRANTED** in part and **DENIED** in part, the findings of the Commissioner are **AFFIRMED** in part and **REVERSED** in part, and this matter is **REMANDED** for further proceedings under Sentence Four.

**IT IS SO ORDERED**.

Date: September 30, 2016          s/Stephanie Dawkins Davis
                                  Stephanie Dawkins Davis
                                  United States Magistrate Judge

31

## <u>CERTIFICATE OF SERVICE</u>

  I certify that on <u>September 30, 2016</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

<u>s/Tammy Hallwood</u>
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov
